**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>JULIE A. SU,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil No. 24-61-BAH</td></tr>
<tr><td>IPROCESS ONLINE, INC., <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Julie Su, Acting Secretary of Labor in the United States Department of Labor ("Plaintiff")

brought suit against iProcess Online, Inc. (the "Company"), Michelle Leach-Bard (along with the

Company, the "Fiduciary Defendants"), and iProcess Online, Inc. 401(k) Plan (the "Plan")

(collectively, "Defendants") alleging violations of the Employee Retirement Income Security Act

("ERISA") of 1974, as amended, 29 U.S.C. § 1001 et seq. *See* ECF 1 (complaint). Pending before

the Court is Plaintiff's Motion for Default Judgment (the "Motion."). ECF 17. Defendants did

not file an opposition. All filings include memoranda of law and exhibits.[1] The Court has

reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md.

2023). Accordingly, for the reasons stated below, Plaintiff's Motion is **GRANTED in part** and

**DENIED in part**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    **BACKGROUND**

### A.    **Factual Allegations**

The Company is a payroll processing company located in Baltimore, Maryland. ECF 1, at 3 ¶ 17. The Company established the Plan effective 2009. *Id.* at 4 ¶ 18. The Plan was an employee benefit plan as that term is defined in 29 U.S.C. §§ 1002(2) and (3).[2] *Id.* at 3 ¶ 16. The Company was the sponsor of the Plan, the Plan's administrator, and had discretionary authority to administer and manage the Plan. *Id.* ¶¶ 11, 12. Plaintiff asserts that Defendant Leach-Bard was an officer of the Company, handled day-to-day operations for the Company and the Plan, and exercised authority or control over Plan administration and assets. *Id.* ¶¶ 14, 15. The Plan was funded by employee contributions through payroll deductions and employer matches. *Id.* at 4 ¶ 19.

From approximately 2014 through 2021, the Fiduciary Defendants "consistently withheld employee contributions from employee paychecks for the stated purpose of remitting this money to employees' accounts in the [Plan.]" *Id.* at 1 ¶ 1. According to Plaintiff, Fiduciary Defendants did not remit all employee contributions to the Plan, and instead allowed the money to remain unsegregated in the Company's general operating account thus commingling it with the Company's assets. *Id.*; *see also id.* at 4 ¶ 23. Plaintiff maintains that "[t]o date, Fiduciary Defendants have failed to remit these employee contributions." *Id.* ¶ 22. Fiduciary Defendants also allegedly failed to ensure that all employer matching contributions for employees were made

---

[2] Under 29 U.S.C. §§ 1002(2) and (3), an employee benefit plan is a "plan, fund, or program," which is "established or maintained by an employer or by an employee organization" that "provides retirement income to employees," or "results in deferral of income by employees for periods extending to the termination of covered employment or beyond."

to the Plan and also failed to process requests for participant distributions including rollovers from the Plan.[3] *Id.* at 1 ¶ 2; *see also id.* at 4 ¶¶ 24–26.

In accordance with 29 C.F.R. § 2510.3-102, "[w]ithheld employee contributions became Plan assets as soon they could have reasonably been segregated them from the Company's general assets, and at most seven days after the end of the month in which they would have been payable to the employee." ECF 1, at 5 ¶ 29. According to the Motion, participants suffered $252,368.75 in losses resulting from Fiduciary Defendants' failure to forward employee contributions and collect required employer contributions. ECF 17-1, at 9. In addition to the damages award, Plaintiff also requests appointment of an independent fiduciary. *Id.* at 10–11. Plaintiff asserts that because the Fiduciary Defendants breached ERISA, the statute expressly permits their removal.[4] *Id.* at 10 (citing 29 U.S.C. § 1109(a)). The United States Department of Labor Employee Benefits Security Administration ("EBSA") reviewed several fee proposals from persons willing to act as independent fiduciaries for the Plan. ECF 17-1, at 11. EBSA recommends the appointment of AMI Benefit Plan Administrators, Inc. as the independent fiduciary. *Id.*

### B.    Procedural History

Plaintiff filed the Complaint on January 8, 2024. ECF 1. Plaintiff served the summons on the Defendants on March 24, 2024. ECF 12. After the Defendants failed to file a responsive pleading, the clerk entered default on April 26, 2024. ECF 15. On May 29, 2024, the Plaintiff

---

[3] The Plan's governing document stated that the Company would make a matching contribution to the Plan for each contributing employee. ECF 1, at 4 ¶ 24.

[4] Plaintiff also filed a status report on November 20, 2024, notifying the Court that since the filing of the Motion for Default Judgment, Defendant Michelle Leach-Bard has been convicted of embezzlement under 29 U.S.C § 1111(a), and is prohibited from serving as a fiduciary to the ERISA-covered retirement plan. ECF 18, at 1 (citing *United States v. Leach-Bard*, 1:24-cr-107-SAG). Plaintiff also indicated that "in recent days, participants have contacted the Acting Secretary seeking distributions, which cannot be processed in the absence of a fiduciary." *Id.*

filed the instant motion for default judgment. ECF 17. Defendants failed to respond to the motion, and the time to do so has now expired. As such, this motion is now ripe for review.

## II.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

With respect to liability, the court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The court applies the

4

pleading standards announced in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) in the context of default judgments. *See, e.g., Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Id.* ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.") (internal quotation marks omitted). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).

If the complaint avers sufficient facts from which the court may find liability, the court next turns to damages. *See Ryan,* 253 F.3d at 780–81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

## III.   ANALYSIS

### A.   Defendants' Liability

Plaintiff seeks default judgment against the Defendants, restoration of "all losses, plus interest and/or lost opportunity costs, incurred by the Plan as a result of [Fiduciary Defendants']

violations of ERISA," and appointment of an independent fiduciary to facilitate distribution of assets. ECF 17, at 2. The Court is satisfied that Defendants were properly served and failed to file a responsive pleading. *See* ECF 12 (summons returned executed). The Court is likewise satisfied that it has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1). As such, in determining whether default judgment is appropriate, the only question before the Court is whether the unchallenged factual allegations in the complaint constitute legitimate causes of action for violations of ERISA.

ERISA is a comprehensive statute enacted to:

> Protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts.

29 U.S.C. § 1001(b). A "fiduciary" is defined under ERISA as any individual who "exercises any discretionary authority or discretionary control" with respect to the management or administration of a plan. 29 U.S.C. § 1002(21). The plan administrator is considered a fiduciary "[b]y the very nature of the position." *Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 231, 237 (4th Cir. 1999).

Viewing the allegations in the Complaint as true, Leach-Bard and the Company are fiduciaries under ERISA. Leach-Bard and the Company exercised discretionary control over both the management and administration of the plan. ECF 1, at 3 ¶¶ 12, 15. Leach-Bard was also an officer of the company and handled day-to-day operations for the Company and the Plan. *Id.* ¶ 14. Additionally, the Company was the Plan's Administrator. *Id.* ¶ 12. As fiduciaries, the Defendants owed certain duties to the Plan and the participants in the Plan. Failure to fulfill the "responsibilities, obligations, or duties imposed upon fiduciaries" constitutes a violation of the statute. 29 U.S.C. § 1109(a).

6

Plaintiff alleges that the Fiduciary Defendants violated ERISA's exclusive purpose requirement, pursuant to 29 U.S.C. § 1103(c)(1), along with several fiduciary duties under ERISA. ECF 17-1, at 6–9. Specifically, Plaintiff asserts that the Fiduciary Defendants violated their duty of loyalty, pursuant to 29 U.S.C. § 1104(a)(1)(A), duty of prudence, pursuant to § 1104(a)(1)(B), duty to not use plan assets for the benefit of a party in interest of any assets of the plan, pursuant to § 1106(a)(1)(D), duty to not deal with plan assets in their own interest, pursuant to § 1106(b)(1), and duty to not act on behalf of a party whose interests are adverse to the plan, pursuant to § 1106(b)(2). *Id.* at 7–9. The Court addresses each alleged violation below, ultimately finding default judgment warranted in each respect.

i.    *Exclusive Purpose Requirement and Duty of Loyalty*

Fiduciaries must hold all assets of a plan for the exclusive purposes of "providing benefits to participants" and "defraying reasonable expenses of administering the plan." 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A). Fiduciaries must also ensure that such assets "never inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). Here, the Fiduciary Defendants failed to remit employee contributions to the Plan in a timely fashion and instead held such assets in the Company's business operating account, where they were available to pay the Company's everyday business expenses. ECF 1, at 5–6 ¶¶ 30, 36. In so doing, the Fiduciary Defendants failed to hold the assets exclusively for the purpose of administering the Plan, as required by 29 U.S.C. §§ 1103(c)(1) and 1104(a)(1)(A). The Fiduciary Defendants also allowed the Plan's assets to inure to the benefit of the Company rather than the Plan. ECF 1, at 5 ¶¶ 30, 31; 29 U.S.C. §§ 1103(c)(1). The Company's actions, as alleged, were not solely in the interest of the Plan, and did not serve the exclusive purpose of providing benefits to participants. Rather, by failing to remit employee contributions and commingling these funds with its own assets, the Fiduciary Defendants

7

interfered with participants' receipt of benefits to which they were entitled and served the Company's interests at participants' expense. As such, the Fiduciary Defendants breached their duties of exclusive purpose and loyalty. *See Walsh v. M-E-C Co.,* No. 19-cv-1660, 2021 WL 1909904, at \*4 (D.S.C. May 12, 2021) ("The Court finds that the Secretary properly alleged that the Company violated its fiduciary duties of loyalty and care under § 1104(a) by failing to remit employee contributions to the Retirement and Health Plans and by commingling these contributions with its general assets.").

### ii.    *Duty of Prudence*

A fiduciary must also follow a "prudent man standard of care" and act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see also Tatum v. RJR Pension Inv. Comm.,* 761 F.3d 346, 356 (4th Cir. 2014) (explaining that the focus is on whether the fiduciary "engaged in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity") (quotations and citations omitted). By delaying remittance of employee contributions to the Plan indefinitely, the Fiduciary Defendants failed to exercise "the care, skill, prudence, and diligence" required of a fiduciary, in violation of 29 U.S.C. § 1104(a)(1)(B). Fiduciary Defendants also failed to ensure that the Plan received employer matching contributions, an action which similarly failed to evince the care that a prudent person would take under similar circumstances. *See Hammer v. Johnson Senior Ctr., Inc.,* No. 19-cv-27, 2020 WL 7029160, at \*10 (W.D. Va. Nov. 30, 2020) (holding that the fiduciaries' "failure to remit employee contributions to the Plan and use of these Plan assets to pay [their] other operating expenses from Plan assets violated their fiduciary duties of loyalty and care under 29 U.S.C. § 1104(a)"). The Court agrees with Plaintiff's contention that

a prudent person acting in a fiduciary capacity in similar circumstances would have taken reasonable steps to enforce the terms of the Plan and make the required contributions.[5] ECF 1, at 7 ¶ 45. Accordingly, the Fiduciary Defendants breached their duty of prudence.

### iii.    Duty Regarding Parties in Interest

Fiduciaries are also prohibited from dealing with plan assets for the benefit of a party in interest. 29 U.S.C. § 1106(a)(1)(D). "ERISA regards specific types of transactions between a plan and related persons, known as 'parties in interest,' as inherently susceptible to abuse." *Walsh*, 2021 WL 1909904, at *3. 29 U.S.C. § 1106(a)(1)(D) prohibits fiduciaries from transferring plan assets to a "party in interest." 29 U.S.C. § 1002(14)(A) defines "party in interest" to include fiduciaries. By failing to remit employee contributions to the Plan and allowing the contributions to commingle with the Company's general assets, Fiduciary Defendants caused the Plan to enter into transactions that they knew or should have known constituted prohibited transfers of plan assets to a party in interest. ECF 1, at 8 ¶¶ 52, 53. Thus, Fiduciary Defendants violated their duty to not use plan assets for the benefit of a party in interest, pursuant to § 1106(a)(1)(D). *See Scalia v. Marzett*, No. 19-cv-1164, 2020 WL 6059865, at *6–7 (E.D. Va. June 19, 2020), *report and recommendation adopted*, 2020 WL 4365535 (E.D. Va. July 30, 2020) (finding defendants breached their fiduciary duty under 29 U.S.C. § 1106(a)(1)(D) because defendants retained plan

---

[5] Additionally, the Fiduciary Defendants did not act "in accordance with the documents and instruments governing the plan," *see* 29 U.S.C. § 1104(a)(1)(D), because the Plan's governing document required that the Company make a matching contribution to the Plan for each contributing employee, but "not all of the mandatory employer contributions were made." ECF 1, at 4 ¶¶ 24, 25; *see Acosta v. Davis-Paige Mgmt. Sys., LLC*, No. 17-cv-497, 2018 WL 1405482, at *5 (E.D. Va. Feb. 13, 2018), *report and recommendation adopted*, 2018 WL 1400967 (E.D. Va. Mar. 20, 2018) ("The [fiduciaries] also did not act in accordance with the documents governing the [] Plans, as they did not follow the proper remittal process as required by the [] Plans . . . Therefore, the [fiduciaries] violated [29 U.S.C. § 1104(a)(1)(D)].").

funds to pay company operating expenses and other debts, which resulted "in the use of plan assets for their own benefit").

<em>iv.    Duty to Refrain from Self-Dealing</em>

29 U.S.C. § 1106(b) prohibits plan fiduciaries from 1) dealing with plan assets for the fiduciary's own benefit; or 2) otherwise placing themselves in a conflict-of-interest situation where their loyalty to the plan may be divided. The Court finds that the Fiduciary Defendants' failure to remit employee and employer contributions to the Plan violated the prohibition against self-dealing set forth in § 1106(b)(1) and (2). Plaintiff alleges that the Company withheld contributions and did not remit the required employee or employer contributions to the Plan—essentially keeping those assets for its own benefit at the expense of the Plan and its participants and beneficiaries. ECF 1, at 9 ¶ 58. Accordingly, the Fiduciary Defendants dealt with the Plan assets for their own interests, and acted on behalf of a party whose interests were adverse to the Plan, its participants, and its beneficiaries. *See Walsh*, 2021 WL 1909904, at *5 (finding a violation of § 1106(b) where a company withdrew employee contributions and insurance premium payments but did not remit them to the Retirement and Health Plans and instead kept the assets for its own benefit). Therefore, Plaintiff has properly set forth a claim against the Fiduciary Defendants for violation of the prohibition against self-dealing under 29 U.S.C. § 1106(b)(1) and (b)(2).

Considering the above, liability as to Fiduciary Defendants is established. *See Perez v. Hicks*, No. 15-cv-1097-ELH, 2016 WL 1469759, at *2 (D. Md. Apr. 15, 2016), *report and recommendation adopted*, No. 15-cv-1097-ELH (D. Md. May 5, 2016) (finding that employer breached fiduciary duties under ERISA by failing to remit employee contributions to an employee benefit plan); *Scalia*, 2020 WL 6059865, at *6–7 (same).

**B.    Damages and Injunctive Relief**

10

Having established the aforementioned violations of §§ 1103, 1104, and 1106, the Court must next determine damages. ERISA provides that a fiduciary that breaches its duties is personally liable (1) "to make good to such plan any losses to the plan resulting from each such breach" and (2) "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Additionally, the breaching fiduciary is "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." *Id.* Any recovery on an ERISA breach of fiduciary duty claim must "inure[] to the benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44 (1985); *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999).

On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested. *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012); *see also Monge*, 751 F. Supp. at 795 (collecting cases in which damages were awarded after an entry of default judgment and without a hearing, based on affidavits, electronic records, printouts, invoices, or other documentary evidence). The Court must be able to "review[] competent evidence in support of this figure." *See Int'l Painters and Allied Trades Indus. Pension Fund v. 3 R Painting & Contracting Co.*, Civ. No. RDB-12-272, 2013 WL 424694, at *7 (D. Md. Jan. 31, 2013) (awarding $114,269.54 in unpaid contributions where the Assistant to the Fund Administrator attested to, *and the Court verified,* the Plaintiff's calculation, as illustrated in the affidavit) (emphasis added).

Plaintiff seeks both monetary damages and injunctive relief under 29 U.S.C. § 1109(a). More specifically, Plaintiff asks the Court to: 1) award $252,368.75 in unpaid benefits; and 2)

11

appoint an independent fiduciary to manage distributions. ECF 17-1, at 9. Although the requested relief is allowable under 29 U.S.C. § 1109(a), the record support is thin.

Plaintiff submits only a brief, eight paragraph declaration authored by Labor Department Investigator Joanna Turcotte in support of the damages request. *See* ECF 17-2, at 1–2. Accordingly, the Court is unable to verify the legitimacy of the damages calculation because there is no evidence in the record for the Court to independently review. Turcotte asserts that she "reviewed the Plan's documents and found that $252,368.75 was owed to the Plan and its participants, as a result of these failures." *Id.* at 2. According to the declaration, Turcotte's findings are based on "personal knowledge, interviews with witnesses and review of documents contained in the EBSA file of the plan." *Id.* at 1. However, Plaintiff does not provide any other evidence supporting the damage amount other than Turcotte's brief, conclusory declaration. *See Walsh v. Yost*, No. 20-cv-449-PX, 2022 WL 9362277, at *3 (D. Md. Oct. 14, 2022) (denying request for monetary and injunctive relief where "[investigator] conclude[d], without underlying documentary support or explanation, that Defendants withheld $67,980.05 in employee contributions," which gave the Court "no basis to credit his ultimate conclusion").

Moreover, no damage amount was specified in the complaint, *see* ECF 1, at 11–12, and Plaintiff did not attach any supporting documentation to the Motion for Default Judgment, aside from Turcotte's declaration. *See* ECF 17-2. To credibly establish that Plaintiff is entitled to $252,368.75, Plaintiff must provide more than a single affidavit asserting the amount owed. *Cf. Select Specialty Hosp. – Quad Cities, Inc. v. WH Admin'rs, Inc.*, Civ. No. PX-18-3586, 2020 WL 4569521, at *6 (D. Md. Aug. 7, 2020) (finding evidence adequately supported the amount sought where, in support of the requested award, Plaintiff submitted an invoice detailing the services and care provided to the patient); *Nat'l Elec. Benefit Fund. v. Wire to Water Elec. of New York, Inc.*,

Civ. No. TDC-19-3003, 2020 WL 1933625, at \*4 (D. Md. Apr. 21, 2020) (awarding requested damages sum where, in support of Plaintiff's request, Plaintiff submitted (1) a "detailed affidavit with exhibits"; (2) a Letter of Assent; (3) the Collective Bargaining Agreement; (4) Trust Agreement; and (5) Delinquency Report).

The Court finds that the affidavit is not sufficiently detailed, and the Motion does not include adequate supporting documentation. *See Walsh*, 2022 WL 9362277, at \*4 ("In short, the Secretary has not shown his work."). Without more, the Court has no competent evidence to review in support of the requested amount and cannot verify Plaintiff's calculation. Because the Court is obligated to make an independent determination regarding damages, the Court declines to award the requested relief at this time. Plaintiff will have one opportunity to supplement the record in support of the damages request. If Plaintiff fails to do so, the denial of relief will stand, and the case will be closed. If Plaintiff credibly establishes the damages amount, the Court will then consider Plaintiff's request for appointment of an independent fiduciary to distribute damages.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for default judgment as to the Fiduciary Defendants' breach of fiduciary duties under ERISA is granted. The request for monetary and injunctive relief is denied without prejudice. The Court grants Plaintiff one opportunity to supplement the record on damages by no later than January 10, 2025.

A separate implementing Order will issue.

Dated: <u>December 2, 2024</u>                        <u>        /s/        </u>
                                                     Brendan A. Hurson
                                                     United States District Judge