IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| VINCENT MICONE, | * |
| Plaintiff, | * |
| v. | * |
|  | *  Civil No. 24-61-BAH |
| IPROCESS ONLINE, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Vincent Micone[1], Acting Secretary of Labor in the United States Department of Labor ("Plaintiff") brought suit against iProcess Online, Inc. (the "Company"), Michelle Leach-Bard (along with the Company, the "Fiduciary Defendants"), and iProcess Online, Inc. 401(k) Plan (the "Plan") (collectively, "Defendants") alleging violations of the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. § 1001 et seq. *See* ECF 1[2] (complaint).

On December 2, 2024, the Court granted in part and denied in part Plaintiff's motion for default judgment, ECF 18. The Court found that Plaintiff established liability as to Defendants' breach of fiduciary duties under ERISA, but Plaintiff failed to provide adequate record evidence to support the request for monetary and injunctive relief. *Id.* The Court afforded Plaintiff one opportunity to supplement the record on damages by January 10, 2025. *Id.*

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary of Labor Vincent Micone is automatically substituted as Plaintiff in this action.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Plaintiff subsequently filed additional documentation to support the damages request on December 27, 2024. *See* ECFs 23, 24.[3] On February 26, 2025, Plaintiff filed updated correspondence regarding the damages request. ECF 27. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, the Court **AMENDS** the default judgment order and awards Plaintiff the requested relief.

## I.  BACKGROUND

### A.  Factual Allegations

Plaintiff brings this suit under ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), which provides a cause of action for breach of fiduciary duty.[4] The Company is a payroll processing company located in Baltimore, Maryland. ECF 1, at 3 ¶ 17. The Company established the Plan effective 2009. *Id.* at 4 ¶ 18. The Plan was an employee benefit plan as that term is defined in 29 U.S.C. §§ 1002(2) and (3).[5] *Id.* at 3 ¶ 16. The Company was the sponsor of the Plan, the Plan's administrator, and had discretionary authority to administer and manage the Plan. *Id.* ¶¶ 11, 12. Plaintiff asserts that Defendant Leach-Bard was an officer of the Company, handled day-to-day operations for the Company and the Plan, and exercised authority or control over Plan

---

[3] Plaintiff filed a motion to seal two exhibits, ECF 22, which will be addressed below. The sealed exhibits can be found at ECF 24.

[4] Litigants "cannot bring suit under § 502(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan." *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013) (explaining that "all relief must go to the Plan itself"); *see also Mass. Mut Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 (2008).

[5] Under 29 U.S.C. §§ 1002(2) and (3), an employee benefit plan is a "plan, fund, or program," which is "established or maintained by an employer or by an employee organization" that "provides retirement income to employees," or "results in deferral of income by employees for periods extending to the termination of covered employment or beyond."

2

administration and assets. *Id.* ¶¶ 14, 15. The Plan was funded by employee contributions through payroll deductions and employer matches. *Id.* at 4 ¶ 19.

From approximately 2014 through 2021, the Fiduciary Defendants "consistently withheld employee contributions from employee paychecks for the stated purpose of remitting this money to employees' accounts in the [Plan.]" *Id.* at 1 ¶ 1. According to Plaintiff, Fiduciary Defendants did not remit all employee contributions to the Plan, and instead allowed the money to remain unsegregated in the Company's general operating account thus commingling it with the Company's assets. *Id.*; *see also id.* at 4 ¶ 23. Plaintiff maintains that "[t]o date, Fiduciary Defendants have failed to remit these employee contributions." *Id.* ¶ 22. Fiduciary Defendants also allegedly failed to ensure that all employer matching contributions for employees were made to the Plan and also failed to process requests for participant distributions including rollovers from the Plan.[6] *Id.* at 1 ¶ 2; *see also id.* at 4 ¶¶ 24–26.

In accordance with 29 C.F.R. § 2510.3-102, "[w]ithheld employee contributions became Plan assets as soon they could have reasonably been segregated them from the Company's general assets, and at most seven days after the end of the month in which they would have been payable to the employee." ECF 1, at 5 ¶ 29. According to the Motion, participants suffered monetary losses resulting from Fiduciary Defendants' failure to forward employee contributions and collect required employer contributions. ECF 17-1, at 9. In addition to the damages award, Plaintiff also requests appointment of an independent fiduciary. *Id.* at 10–11. Plaintiff asserts that because the Fiduciary Defendants breached ERISA, the statute expressly permits their removal.[7] *Id.* at 10

---

[6] The Plan's governing document stated that the Company would make a matching contribution to the Plan for each contributing employee. ECF 1, at 4 ¶ 24.

[7] Plaintiff also filed a status report on November 20, 2024, notifying the Court that since the filing of the Motion for Default Judgment, Defendant Michelle Leach-Bard has been convicted of

3

(citing 29 U.S.C. § 1109(a)). The United States Department of Labor Employee Benefits Security Administration ("EBSA") reviewed several fee proposals from persons willing to act as independent fiduciaries for the Plan. ECF 17-1, at 11. EBSA recommends the appointment of AMI Benefit Plan Administrators, Inc. as the independent fiduciary. *Id.*

### B.    Supplemental Documentation Supporting Damages Request

In the memorandum opinion issued on December 2, 2024, this Court held that the affidavit submitted by Labor Department Investigator Joanna Turcotte was "not sufficiently detailed, and the Motion [did] not include adequate supporting documentation." ECF 19, at 13. The Court granted Plaintiff one opportunity to supplement the record on damages, and Plaintiff subsequently filed additional documentation.

On December 27, 2024, Plaintiff submitted an updated affidavit from Turcotte, which contained ample information about Turcotte's investigation and the allegedly withheld contributions. *See generally* ECF 24. Additionally, attached to Turcotte's declaration are copies of employees' paystubs documenting their 401(k) employee contributions deducted from their pay for each period from 2014 through 2021, ECF 24-1, as well as copies of the transaction histories for the employees' individual accounts at Fidelity from January 2014 to December 2021, ECF 24-2. Turcotte affirms that a "[c]omparison of the individual employee accounts at Fidelity, against the employees' paystubs showed that between July 2014 and December 2021 the Defendants withheld and failed to remit $175,427.16 in employee contributions from the three employees' pay which should have been remitted to the employees' individual 401(k) accounts." ECF 24, at 2 ¶

---

embezzlement under 29 U.S.C § 1111(a), and is prohibited from serving as a fiduciary to the ERISA-covered retirement plan. ECF 18, at 1 (citing *United States v. Leach-Bard*, 1:24-cr-107-SAG). Plaintiff also indicated that "in recent days, participants have contacted the Acting Secretary seeking distributions, which cannot be processed in the absence of a fiduciary." *Id.*

7. Specifically, "[t]he transaction histories showed no contributions paid to employees' individual 401(k) accounts for any pay periods after June 2014," however, "according to paystubs, Defendants continued to withhold contributions each pay period through December 2021." *Id.*

Turcotte further explained that "[a] comparison of the individual employee accounts at Fidelity against the employees' paystubs indicated that between July 2014 and December 2021 the Defendants failed to provide $16,850.17 in matching employer contributions which should have been remitted to the three employees' individual 401(k) accounts." *Id.* at 3 ¶ 9. Specifically, "[t]he transaction histories showed no employer matching contributions were paid to employees' individual 401(k) accounts for any pay periods after June 2014," however, "according to paystubs, Defendants continued to report paying employer matching contributions each pay period through December 2024." *Id.*

Turcotte calculated prejudgment interest for the employee and employer contributions using the Internal Revenue Service underpayment interest as set quarterly ranging from 3% to 8% and compounded daily. ECF 24, at 3 ¶ 10 (citation omitted). Turcotte ultimately determined that the Plan is owed $276,744.71 representing unpaid employee and employer contributions and prejudgment interest. *Id.* ¶ 12.

On February 26, 2025, Plaintiff submitted an update to the Court, ECF 27, indicating that "the Court in *United States v. Leach-Bard*, 1:24-cr-00107 ordered restitution that appears to overlap with the recovery that [Plaintiff] seek[s] here."[8] *Id.* Due to the changed circumstances,

---

[8] The Court also takes judicial notice of *Mahoney v. iProcess Online, Inc.*, Civ No. JKB-22-0127, 2022 WL 17585160 (D. Md. Dec. 12, 2022) and *Mahoney v. iProcess Online, Inc.*, 681 F. Supp. 3d 446 (D. Md. 2023), in which three individual Plan participants brought suit against iProcess and Leach-Bard for failing to transfer funds to Plaintiffs' 401(k) accounts. The plaintiffs were awarded compensatory and punitive damages for breach of contract and negligent misrepresentation under state law. *Mahoney*, 681 F. Supp. 3d at 453. In response to the Court's request for additional information, Plaintiff clarified that "[a]lthough there may be some potential

Plaintiff submitted another declaration from Turcotte "to reconcile total losses." *Id.* Plaintiff also attached an exhibit that "identifies the impact [of the restitution] on individual participants." *Id.*; ECF 27-2. Turcotte affirms that she has "reviewed the Criminal Award," and it was "for four employees and included unpaid employee contributions only, without employer contributions or prejudgment interest." ECF 27-1, at 2 ¶ 9. Turcotte explains that "[a]fter crediting the Criminal Award paid to each of the three employees included in this investigation, $514.11 in employee contributions remains unpaid," and further, "[n]o restitution was paid for delinquent employer matching contributions." *Id.* ¶¶ 10, 11. The outstanding employer contributions is $16,562.65.[9] *Id.* ¶ 11. Turcotte also "updated [the] calculation of prejudgment interest on employee contributions after applying the Criminal Award to each employee." *Id.* at 2–3 ¶ 12. The "adjusted prejudgment interest for employee contributions is $77,064.11 as of December 1, 2024," and the "[p]rejudgment interest for employer contributions remains $6,098.67 also calculated as of December 1, 2024." *Id.* In total, the Plan is owed $100,239.54 representing unpaid employee and employer contributions and prejudgment interest.[10] *Id.* at 3 ¶ 13.

---

overlap between the damages awarded in *Mahoney* and the damages sought here, the *Mahoney* judgment has not been satisfied and the Secretary has already reduced her proposed award to reflect the amounts actually paid in the Criminal Case." ECF 29, at 1. Plaintiff additionally indicated that "[t]he Secretary will continue work post-judgment to ensure that defendants are given proper credit for any recoveries on related judgments so as to avoid duplication." *Id.*

[9] Turcotte noted that there was an error in the prior calculation of the outstanding employer matching contributions. *Id.* ¶ 11.

[10] The amount each individual employee lost is set forth in the chart at ECF 27-2. The chart includes the participant, the outstanding employee contributions, the lost earnings, and the total employee contributions owed, as well as outstanding employer contributions, lost earnings, and the total employer contributions owed. *Id.*

6

### C. Procedural History

Plaintiff filed the Complaint on January 8, 2024. ECF 1. Plaintiff served the summons on the Defendants on March 24, 2024. ECF 12. After the Defendants failed to file a responsive pleading, the Clerk entered default on April 26, 2024. ECF 15. On May 29, 2024, the Plaintiff filed the instant motion for default judgment. ECF 17. Defendants failed to respond to the motion, and the time to do so has now expired. On December 2, 2024, the Court held that Plaintiff had established liability, but failed to adequately support the damages request. Plaintiff provided additional documentation to support the damages request on December 27, 2024. The Court now amends the motion for default judgment, ECF 17, in light of the updated record on damages.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of

the court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

With respect to liability, the court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) in the context of default judgments. *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Id.* ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.") (internal quotation marks omitted). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).

If the complaint avers sufficient facts from which the court may find liability, the court next turns to damages. *See Ryan*, 253 F.3d at 780–81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed

8

in amount, what is demanded in the pleadings."). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

## III. ANALYSIS

### A. Motion to Seal

Plaintiff filed a motion to seal two exhibits relating to the calculation of damages. ECF 22, at 1. Plaintiff indicates that the exhibits "include employee paystubs and documentation of 401(k) Plan accounts provided by the workers," and thus "contain sensitive details, including financial account numbers, as well as home addresses, pay and savings information, etc." *Id.*

Under Local Rule 105.11, "[a]ny motion seeking the sealing of . . . motions, exhibits[,] or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The common law presumes that the public has a right to inspect judicial records and documents. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). This presumption of access, however, may be overcome if competing interests outweigh the interest in access. *Id.* Additionally, "the non-moving party must be provided with notice of the request to seal and an opportunity to object. This requirement may be satisfied . . . by docketing the motion reasonably in advance of deciding the issue." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 316 (D. Md. 2014) (internal quotations and citations omitted). Before sealing, the Court must consider less drastic alternatives. *Id.*

As relevant here, partial sealing of court records may be justified where the documents contain sensitive personal and financial information. *See id.* at 317 (holding documents can remain under seal because they "were produced from employee personnel files that contain sensitive

9

personal and commercial information"). Plaintiff has complied with procedural requirements, and the Court agrees with Plaintiff that "[r]edacting these documents would render them unusable." ECF 22, at 2. Accordingly, the motion to seal, ECF 22, is granted.

### B.     Damages and Injunctive Relief

In the memorandum opinion issued on December 2, 2024, ECF 19, the Court held that liability as to the Fiduciary Defendants was established. Having established the violations of §§ 1103, 1104, and 1106, the Court must now, in light of the updated record, determine damages.

ERISA provides that a fiduciary that breaches its duties is personally liable (1) "to make good to such plan any losses to the plan resulting from each such breach" and (2) "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Additionally, the breaching fiduciary is "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." *Id.* Any recovery on an ERISA breach of fiduciary duty claim must "inure[] to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co.*, 473 U.S. at 140–44; *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999).

On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested. *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012); *see also Monge*, 751 F. Supp. 2d at 795 (collecting cases in which damages were awarded after an entry of default judgment and without a hearing, based on affidavits, electronic records, printouts, invoices, or other documentary evidence). The Court must be able to "review[] competent evidence in support of this figure." *See Int'l Painters and Allied Trades Indus. Pension Fund v. 3 R Painting & Contracting Co.*, Civ. No. RDB-12-272, 2013 WL 424694, at *7 (D. Md. Jan. 31, 2013) (awarding $114,269.54 in unpaid contributions

where the Assistant to the Fund Administrator attested to, *and the Court verified*, the Plaintiff's calculation, as illustrated in the affidavit) (emphasis added).

Here, Plaintiff seeks $100,239.54 in monetary damages to be paid to the Plan.[11] ECF 27-1, at 3 ¶ 13. Equitable remedies under 29 U.S.C. § 1109(a) can include restoration of the losses to the plan resulting from fiduciary misconduct. *See, e.g., Solis v. Smart Tech., Inc.*, No. 12-cv-284, 2012 WL 4866525 (E.D. Va. Aug. 27, 2012) *report and recommendation adopted*, 12-cv-284, 2012 WL 4866512 (E.D. Va. Oct. 11, 2012) (finding defendants breached their fiduciary duties under ERISA and ordering them to restore the losses to the plan caused by their fiduciary misconduct in an amount inclusive of employee contributions that were never paid to the Plan's asset custodian and pre-judgment interest). Plaintiff submitted the Declaration of Turcotte, a labor department investigator, in support of the requested relief, as well as relevant exhibits. *See* ECF 24-1; ECF 24-2; ECF 27-2. Turcotte affirms that Defendants failed to remit a total of $100,239.54 in unpaid employee and employer contributions and prejudgment interest. ECF 27-1, at 3 ¶ 13; ECF 27-2. In support of her statement, Turcotte attached copies of employees' paystubs documenting their 401(k) employee contributions deducted from their pay for each period from 2014 through 2021, ECF 24-1, as well as copies of the transaction histories for the employees' individual accounts at Fidelity from January 2014 to December 2021, ECF 24-2. Turcotte affirms that a "[c]omparison of the individual employee accounts at Fidelity, against the employees' paystubs showed that between July 2014 and December 2021 the Defendants withheld and failed to remit $175,427.16 in employee contributions from the three employees' pay which should have

---

[11] As noted above, this amount was updated by Plaintiff to take into account the restitution Leach-Bard was ordered to pay in a separate criminal case. *See* ECF 27-1, at 2 ¶¶ 7–12; *see also United States v. Leach-Bard*, 24-cr-107-SAG (sentencing and restitution ordered on September 5, 2024, at ECF 22).

been remitted to the employees' individual 401(k) accounts." ECF 24, at 2 ¶ 7. Turcotte further explains that "[a] comparison of the individual employee accounts at Fidelity against the employees' paystubs indicated that between July 2014 and December 2021 the Defendants failed to provide $16,850.17 in matching employer contributions which should have been remitted to the three employees' individual 401(k) accounts." *Id.* at 3 ¶ 9.

After learning that Defendant Leach-Bard was ordered to pay restitution as part of a separate criminal case, Turcotte reviewed the restitution and "identified a partial overlap with the amount [she] previously identified as being owed here," and "credit[ed] the Criminal Award paid to each of the three employees included in this investigation[.]" ECF 27-1, at 2 ¶¶ 8, 10. Turcotte then "updated [the] calculation of prejudgment interest on employee contributions after applying the Criminal Award to each employee." *Id.* ¶ 12. After reviewing Turcotte's declarations and the relevant exhibits, the Court finds that Plaintiff has now presented sufficient evidence to support the damages claimed.[12] Record evidence shows that Defendants owe $514.11 for outstanding employee contributions, $77,064.11 for pre-judgment interest for employee contributions, $16,562.65 for outstanding employer contributions, and $6,098.97 for pre-judgment interest for employer contributions. ECF 27-2, at 1. Thus, Defendants are jointly and severally liable to the Plan for a total amount of $100,239.54, which the Defendants shall repay in full within 60 calendar days of this Order.

"In conjunction with a default judgment, the Court also may order equitable relief." *Perez v. Estate of Buckingham*, Civ. No. PWG-12-3576, 2014 WL 320130, at *5 (D. Md. Jan. 28, 2024)

---

[12] The Court independently reviewed the damages calculations and determined that $100,239.54 is owed to the Plan. The Court also independently verified the restitution amounts ordered in the separate criminal case by reviewing the relevant documents in *United States v. Leach-Bard*, Docket No. 24-cr-107-SAG.

(citations omitted). Here, Plaintiff seeks removal of Defendants as fiduciaries of the Plan and entry of a permanent injunction prohibiting Defendants from acting as fiduciaries to any plan governed by ERISA and from engaging in further violations of ERISA. Removal of Defendants as fiduciaries of the Plan is plainly appropriate in light of their breaches and their failure to properly administer the Plan. It is likewise appropriate to prohibit Defendants from serving as fiduciaries to any plan governed by ERISA. *See Estate of Buckingham*, 2014 WL 320130, at * 6 (removing fiduciaries and permanently enjoining them from serving as fiduciaries of plans in the future, in conjunction with entry of default judgment); *Acosta v. WH Admin'rs, Inc.*, 449 F. Supp. 3d 506, 520 (D. Md. 2020) ("Under ERISA, the Secretary is authorized to permanently enjoin breaching fiduciaries from acting as an ERISA provider in any fiduciary capacity.") (citing 29 U.S.C. § 1132(a)(5)). Accordingly, the Court removes Defendants as fiduciaries of the Plan and enjoins them from any future service as a fiduciary for an ERISA governed plan.

Finally, where fiduciaries of a plan governed by ERISA have been removed, it is appropriate for the Court to appoint an independent fiduciary to serve in their place. *See Chao v. Malkani*, 216 F. Supp. 2d 505, 518 (D. Md. 2002) (ordering the defendants be removed from fiduciary authority over an employee benefits plan subject to ERISA and substituting an independent fiduciary for the removed defendants). Turcotte "review[ed] and compar[ed] the various fee proposals," and believes based on her "knowledge of other independent fiduciaries appointed to do similar work on ERISA-covered plans investigated by EBSA's Washington District Office," that the "proposal submitted by AMI Benefit Plan Administrators, Inc. is reasonable and consistent with the market rate for the required work." ECF 17-2, at 2 ¶ 8. The Court accepts Turcotte's representations as credible, and a hearing on the matter is thus unnecessary. Accordingly, the Court appoints AMI Benefit Plan Administrators, Inc. to serve as

an independent fiduciary for the purpose of terminating the Plan and distributing its assets to its participants and beneficiaries in accordance with the terms of the Plan. The Court further orders Defendants to reimburse the Plan for the cost of the services to be provided by AMI Benefit Plan Administrators, Inc., not to exceed $2,850 fixed plus ten basis points (0.10%) of the Plan annual balance to perform recordkeeping services as long as necessary. *See Estate of Buckingham*, 2014 WL 320130 at *6. Finally, if Defendants fail to comply with the payment obligations described above, AMI Benefit Plan Administrators, Inc. may offset the Defendants' individual Plan account to satisfy legitimate claims on the Plan by its participants and beneficiaries and the Independent Fiduciary's fees, and the Plan's administrative costs, consistent with the expense limit set forth above.

## IV.    CONCLUSION

For the foregoing reasons, the Court amends the order for default judgment and grants Plaintiff the requested relief.

A separate implementing Order will issue.

Dated: April 21, 2025

/s/
Brendan A. Hurson
United States District Judge